**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-08000-001-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carlos Aaron Melgoza-Paniagua, | |
| Defendant. | |

Defendant Carlos Aaron Melgoza-Paniagua has moved to dismiss the indictment. Doc. 31. The question presented by his motion is whether the Utah crime of attempted forcible sexual abuse, to which Melgoza pled guilty in 2010, was a crime of violence under 18 U.S.C. § 16(b). The Court concludes that immigration authorities did not err when they found it to be a crime of violence, and therefore will deny Defendant's motion.

**I.      Background.**

Defendant Melgoza was born in Mexico and entered the United States with his family when he was a child. Doc. 32-1. He continued to live in the United States until he pled guilty in Utah to attempted forcible sexual abuse. *Id*. He was sentenced to three years' probation and 365 days in jail for this crime. *Id.* In September of 2010, Melgoza was served with a "Notice of Intent to Issue a Final Administrative Order." *Id.* at 16. The Notice stated that Melgoza was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who had been convicted of an aggravated felony. Doc. 32-1 at 16. In the Final Administrative Removal Order, an immigration official based in Salt Lake City, Utah, found that because Melgoza had an aggravated felony he was deportable and ineligible

for any relief from removal. *Id.* at 19. Melgoza was deported to Mexico on September 9, 2010. *See* Doc. 1. In November of 2013, Melgoza was found in Arizona and charged with illegal reentry under 8 U.S.C. § 1326. *Id.* Melgoza argues that his original removal proceedings were fundamentally unfair because his conviction for forcible sexual abuse did not constitute a crime of violence and therefore was not an aggravated felony. Doc. 31.

**II.     Due Process and Removal Orders.**

An alien who has been deported and subsequently reenters the country may be charged under 8 U.S.C. § 1326. The alien may not challenge the validity of his underlying deportation unless he can demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *Id.* § 1326(d); *see United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001). "An underlying removal order is 'fundamentally unfair' if: '(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)).

Melgoza argues that his underlying deportation order was fundamentally unfair because he was deprived of an opportunity for judicial review and was not advised of his right to discretionary relief. Doc. 31 at 2. Ordinarily, a person in a removal proceeding has a due process right to a meaningful opportunity for judicial review of his deportation order. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). When a person is eligible for relief from deportation, an immigration judge ("IJ") "must advise the alien of this possibility and give him the opportunity to develop the issue." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989). "[A]n IJ's failure to so advise an alien violates due process and can serve as the basis for a collateral attack to a deportation order where,

as here, the order is used as the predicate for an illegal reentry charge under § 1326." *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 (9th Cir. 2010).

An alien who has been convicted of an aggravated felony does not have these due process rights. He is subject to expedited removal and ineligible for any discretionary relief. 8 U.S.C. §§ 1228(b), 1229a. In Melgoza's case, the Utah-based immigration officials determined that his crime of forcible sexual abuse was a crime of violence and therefore an aggravated felony. *See* Doc. 32-1 at 16. If the officials were wrong, then Melgoza was denied due process and his removal order cannot serve as a predicate for the charge of illegal reentry under 8 U.S.C. § 1326.

### III. Applicable Law.

There is an abundance of circuit court case law on whether particular offenses are crimes of violence. Before deciding whether Melgoza's conviction for forcible sexual abuse is such a crime, the Court must decide which circuit's law to apply.

Melgoza's removal proceedings occurred in Utah, which is in the Tenth Circuit. Now that Melgoza collaterally attacks his removal proceedings in the Ninth Circuit, the issue becomes whether to apply Ninth or Tenth Circuit law. The Ninth Circuit has not directly addressed this issue, although it has held in a related context that courts should look to the "applicable law at the time of the removal hearing," not to subsequent developments in case law. *See United States v. Vidal-Mendoza*, 705 F.3d 1012, 1013 (9th Cir. 2013). The Court likewise concludes that it should look to applicable law at the time and place of Melgoza's removal, not to law from the circuit where he subsequently is charged with illegal reentry.

During Melgoza's removal proceedings, federal immigration officials in Utah would have followed Tenth Circuit law in deciding whether the Utah crime of forcible sexual abuse constitutes a crime of violence. In now deciding whether those officials made the right decision – whether Melgoza's Utah felony was in fact a crime of violence for federal immigration purposes – the Court should also apply Tenth Circuit law. It would make little sense, and be patently unfair to the government, for the Court to apply

Ninth Circuit crime-of-violence law and conclude that the Utah immigration officials erred when they applied their own circuit's law. The Court cannot reasonably expect that those officials somehow should have foreseen that Defendant would return to the United States illegally, be charged with illegal reentry in the Ninth Circuit, and succeed in persuading a court to apply Ninth Circuit law to the decision they were charged with making. As has been said in other contexts, immigration officials are not required to be clairvoyant. *Muro-Inclan*, 249 F.3d at 1183. The Court therefore will apply Tenth Circuit law, and respectfully disagrees with courts that have reasoned otherwise. *See, e.g.*, *United States v. Nahun-Torres*, No. CR 12-306-SI, 2013 WL 140047 (N.D. Cal. Jan. 10, 2013).

**IV.   Analysis.**

At the time of Melgoza's conviction, Utah Code Ann. § 76-5-404 defined the crime of forcible sexual abuse as follows:

> A person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breast of a female, or otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.

*Id.* The question is whether the Utah immigration officials correctly determined that this offense was a crime of violence and therefore an aggravated felony. *See* 8 U.S.C. § 1101(43)(F).

A crime of violence is defined as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

In assessing whether a crime qualifies as a crime of violence under this definition, a court must decide whether it is categorically a crime of violence. *See Taylor v. United*

*States*, 495 U.S. 575, 599-602 (1990).  This requires the Court "to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime."  *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004).  There is also a "modified categorical approach," but the parties agree it does not apply to this case.

The government concedes that § 16(a) does not apply to Melgoza's conviction for forcible sexual abuse, but argues that the Utah felony is categorically a crime of violence under § 16(b).  Doc. 38 at 6.  "[F]or a prior offense to be a crime of violence under § 16(b), the 'substantial risk' of 'physical force' must inhere in the elements of the prior offense rather than from the specific conduct in which the defendant engaged."  *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007).  "[T]he term 'force' refers to 'destructive or violent force,' and [the] term 'substantial risk' requires a 'high probability' that such force may be employed."  *Id.* (quoting *United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003)).  The mere possibility that destructive or violent force might be used while committing the offense does not make the offense a crime of violence.  *Id*. at 1213.

The Court finds that two Tenth Circuit cases are on point.[1]  In *United States v. Reyes-Castro*, 13 F.3d 377 (10th Cir. 1993), the court considered whether Utah Code § 76-5-404.1 was a crime of violence under § 16(b).  This statute is identical to § 76-5-404, except that it applies only when the offender is an adult and the victim is younger than fourteen years of age.  *Id.* at 378-79.  The court found:

> Because the crime involves a non-consensual act upon another person, there is a substantial risk that physical force may be used in the course of committing the offense.  It does not matter whether physical force is actually used. . . .  A common sense view of the sexual abuse statute, in

---

[1] In *McCann v. Bryon L. Rosquist, D.C., P.C.*, 185 F.3d 1113 (10th Cir. 1999), *cert. granted, judgment vacated*, 529 U.S. 1126 (2000), the Tenth Circuit held that Utah's forcible sexual abuse statute was a crime of violence under § 16(b).  Because this decision was vacated by the Supreme Court, however, it has no precedential effect and the Court will not consider it.  *See O'Connor v. Donaldson*, 422 U.S. 563, 578 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case."); *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("[A] decision that has been vacated has no precedential authority whatsoever.").

> combination with the legal determination that children are incapable of consent, suggests that when an older person attempts to sexually touch a child under the age of fourteen, there is always a substantial risk that physical force will be used to ensure the child's compliance.

*Id.* at 379.  The court held that attempted sexual abuse of a child was a crime of violence under § 16(b).  *Id.*

In *United States v. Rowland*, 357 F.3d 1193 (10th Cir. 2004), the court considered whether the offense of sexual battery was a crime of violence under Federal Sentencing Guidelines § 4B1.2(a).  Section 4B1.2(a) states that an offense is a crime of violence if it "involves conduct that presents a serious potential risk of physical injury to another."  The offense of sexual battery was defined under Oklahoma law as "the intentional touching, mauling, or feeling of the body or private parts of any person sixteen (16) years of age or older, in a lewd and lascivious manner and without the consent of that person." 357 F.3d at 1195.  In finding that this was a crime of violence, the Tenth Circuit emphasized that "[b]ecause the statute at issue here presupposes a lack of consent, it necessarily carries with it a risk of physical force. . . . The serious risk of bodily injury is a constant in cases involving sexual battery." *Id.* at 1197-98.

*Rowland* is not entirely on point because it involved a different standard, a risk of "physical injury" as opposed to "physical force."  *See United States v. Lucio-Lucio*, 347 F.3d 1202, 1207 (10th Cir. 2003) (the failure to recognize the difference between § 16 and § 4B1.2 would "collapse the distinction between these two differently-worded definitions").  The Court nonetheless finds the analysis in *Rowland* relevant, and notes that the Fifth Circuit later found the same Oklahoma law to be a crime of violence under § 16(b).  *Zaidi v. Ashcroft*, 374 F.3d 357 (5th Cir. 2004); *see also Lisbey v. Gonzales*, 420 F.3d 930 (9th Cir. 2005) (finding similar statute categorically a crime of violence).

These cases teach that nonconsensual sexual activities, even mere touching, involve a risk of physical force.  *See Rowland*, 357 F.3d at 1197; *see also Sutherland v. Reno*, 228 F.3d 171, 177 (2d Cir. 2000) (Sotomayor, J.) (agreeing that "the non-consent of the victim is a touchstone for determining whether a crime" fits under § 16(b)).  Courts

1  reason that, given the lack of consent by the victim, there is always a substantial risk the
2  perpetrator will use physical force to ensure compliance, particularly if the victim resists.
3  *See Reyes-Castro*, 13 F.3d at 379.

4  Utah's forcible sexual abuse statute criminalizes the nonconsensual touching of
5  another's private areas, or the taking of "indecent liberties with another," done with the
6  intent to cause substantial emotional or bodily pain or to arouse or gratify sexual desire.
7  § 76-5-404.  Such nonconsensual sexual activity involves a substantial risk of physical
8  force under the cases discussed above.  Furthermore, Utah's forcible sexual abuse statute
9  is very similar to the sexual battery statute in *Rowland* and almost identical to the statute
10 in *Reyes-Castro*.  The statute in *Reyes-Casto* criminalized the same conduct as does § 76-
11 5-404, except that it required the victim to be younger than fourteen years of age.
12 Arguably, there is an even greater risk of physical force when the victim is older than
13 fourteen – the older victim may be more assertive in resisting, thereby increasing the risk
14 that physical force will be used to complete the crime.

15 Melgoza argues that Utah's definition of the phrase "without the consent of the
16 other" shows that the offense is not categorically a crime of violence.  Section 76-5-406
17 includes a list of circumstances in which a sexual offense may be committed without the
18 consent of another.  Most of the circumstances fall squarely within the rationale of the
19 cases discussed above and clearly present a substantial risk that physical force will be
20 used.  *See*, *e.g.*, *id.* §§ 406(1) (victim expresses lack of consent), 406(2) (actor overcomes
21 victim through physical force or violence), 406(3) (actor overcomes victim through
22 concealment or surprise), 406(4)(a)(i) (actor coerces victim through threats), 406(7)
23 (victim erroneously believes actor to be the victim's spouse), 406(9) (victim is under 14
24 years of age), 406(11) (victim is between 14 and 18 and actor uses force or threat).

25 Melgoza points to a few circumstances listed in § 76-5-406 that, he argues, would
26 not involve a substantial risk of physical force, such as forcible sexual abuse when the
27 victim is incapable of "appraising the nature of the act," when the victim is younger than
28 18 and the actor is a parent, guardian, or in a position of special trust, or when the victim

reasonably believes the act is for medically or professionally appropriate diagnosis, counseling, or treatment. *Id.* § 406(6), (10), (12). The Court is not persuaded, however, that these circumstances necessarily lack a substantial risk of physical force. A victim incapable of appraising the nature of the act may nonetheless resist when the act is committed. A victim under the age of 18 may resist even if the actor is a parent, guardian, or person of trust. And a victim may resist in a professional setting once the nature of the act becomes clear.

The Supreme Court has instructed that the proper inquiry under the categorical approach is whether the conduct encompassed by the statute, "in the ordinary case," is a crime of violence. *James v. United States*, 550 U.S. 192, 208 (2007). This does not require that "every conceivable factual offense covered by a statute" amount to a crime of violence. *Id*. Given the nature of forcible sexual abuse and the specific circumstances listed in § 76-5-406, the Court concludes that the Utah crime, in the ordinary case, would involve a substantial risk of physical force.

Indeed, Utah courts have made clear that the key element is a lack of consent, and that the circumstances listed in § 76-5-406 are not exclusive:

> [S]ection 76-5-406 merely defines specific circumstances in which consent does not exist. . . . [The statute] limits the various theories of consent that might otherwise be available. While the existence of consent remains, generally, a question of fact, facts satisfying one or more prongs of [the statute] establish lack of consent *as a matter of law*. Fact finders are not, however, precluded from determining that circumstances outside those defined in section 76-5-406 may still amount to lack of consent in any particular case.

*State v. Salazar*, 114 P.3d 1170, 1172 (Utah Ct. App. 2005) (emphasis in original) (citations omitted). Thus, the ordinary case of forcible sexual abuse is when a person inappropriately touches another without their consent. The Tenth Circuit has found that this type of nonconsensual sexual activity involves a substantial risk of physical force. *See, e.g.*, *Rowland*, 357 F.3d at 1197. Furthermore, § 76-5-406's definition of "without the consent of another" also applied to the offense of sexual abuse of a child, the offense in question in *Reyes-Castro*. Although *Reyes-Castro* did not address § 76-5-406, the

court nonetheless found that the offense was a crime of violence.

Finally, Melgoza argues that *Rowland* and *Reyes-Castro* are no longer good law in light of recent Supreme Court precedent. In *Leocal*, the Court stressed that § 16 applied to a "category of violent, active crimes." 543 U.S. at 11. In *Johnson v. United States*, 559 U.S. 133 (2010), the Court explained that "the phrase 'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person." *Id.* at 140. Neither of these cases suggests, however, that actual physical force must be present for an offense to constitute a crime of violence under § 16(b). As *Leocal* explains, § 16(b) "simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." 543 U.S. at 10. "The reckless disregard in § 16 relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing the crime." *Id.* (emphasis in original).

The Tenth Circuit cases are not inconsistent with these statements. *Rowland* and *Reyes-Castro* do not suggest that something less than a risk of violence or physical injury is involved in the physical force they discuss. Both cases contemplate situations where the perpetrator may need to use physical force to overcome a victim's resistance to sexual abuse. *See, e.g.*, *Rowland*, 357 F.3d at 1197 (finding that sexual act occurring without consent "necessarily carries with it a risk of physical force"); *Reyes-Castro*, 13 F.3d at 379 ("[T]here is a substantial risk that physical force may be used in the course of committing the offense."). Physical force necessary to overcome a victim's resistance to inappropriate touching or sexual contact inherently is violent and capable of causing physical pain.

Furthermore, the reasoning in the Tenth Circuit cases is similar to that employed in *James*. There, the Supreme Court found attempted burglary to be a crime of violence, reasoning that "[i]nterrupting an intruder at the doorstep while the would-be burglar is attempting a break-in creates a risk of violent confrontation comparable to that posed by

finding him inside the structure itself." 550 U.S. at 203-04. *Rowland* and *Reyes-Castro* likewise recognize that interrupting or resisting a person who is attempting to sexually abuse another creates a risk of violent confrontation.

**V.     Conclusion.**

In the ordinary case, § 76-5-404 cannot be violated without a substantial risk that physical force may be used. By committing attempted forcible sexual abuse and thereby violating that statute, Melgoza committed a crime of violence under Tenth Circuit law. He therefore was not denied due process when immigration officials placed him in an expedited removal process and did not advise him of the possibility of discretionary relief.

**IT IS ORDERED** that Defendant's Motion to Dismiss the Indictment (Doc. 31) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 10/6/2014.

Dated this 19th day of November, 2014.

_____
David G. Campbell
United States District Judge